Good morning, Your Honors. Good morning. My name is Zach Muscatel. I represent the appellants in this matter. With your permission, I'd like to request four minutes reserved for rebuttal. Is it Levesque? It's Levesque. Levesque. Yes, it took me a year to get it right, Your Honor. This case is a scenario that arises or arrives at this court after a summary judgment ruling in favor of the defendants. Judge Bolton issued that ruling on the basis that a clear constitutional violation did not occur. And it was on that basis that her analysis then proceeded through the remainder of the complaint, eventually ruling against my client. It is our position that a clear constitutional violation did indeed occur. There's no question that the officers were on notice that excessive force, if applied or employed, does qualify as a clear constitutional violation. We believe that, at the very least, the facts presented and as pled by appellants provide a factual scenario within which my client provided or presented no immediate risk. He was shot from the side in his Dodge pickup truck. He was not shot from the front. Appellees have contended consistently that there's no question or dispute that the vehicle my client was driving was directed, quote-unquote, at the relevant officers. But in actuality, as the expert we've utilized, as well as the accident reconstruction provided by defendants,  And at the time the shots were fired, as noted by Van Blericombe, who was the expert we utilized, the shots were fired from the side of the vehicle. In other words, the vehicle ceased to be a threat in any way, if it ever was, at the time the MP5 machine gun was pointed into the direction of the driver's side window and a round of ammunition was fired. Would you agree that the truck posed a threat to the safety of the officers if they had to jump out of the way of the truck as it was coming between them? Judge, if it was undisputed that the truck was driving the officers and had to jump out of the way, I don't think that it would be reasonable to argue against that point. Unfortunately, or at least from my perspective, fortunately, there's a variety of witnesses in this case. While it's not on film like it was in Scott, in this scenario we had a lay witness, in fact, the only lay witness, that was waiting to turn into this driveway. And she indicates that at no point were either of the officers in danger of being hit by that vehicle. My client indicates under deposition and under sworn testimony that they were not directly in front of his vehicle. The shots fired at him. Excuse me. Didn't your expert acknowledge that the vehicle came within 18 inches of one of the officers? The expert acknowledged that the gun was shot from the side 18 inches away from my client. That's correct. He does not acknowledge that the front of the vehicle was 18 inches away from the officer at the time he opened fire. At no point. Does it have to be the front of the vehicle? You can get hit by any portion of the vehicle, can't you? Judge, I think that the reasonableness factor comes into play here. If it was clear that my client had a history of trying to run over people or he had had rapid flight from officers, was aware that they were officers, all those factors come into play in that question you posed. But my specific question was it didn't have to be the front of the vehicle that hit the officers. As long as any part of the vehicle could hit them, wouldn't that still be a danger? It could be the side, the back, any part of the vehicle, couldn't it? Judge, from that approach, any time somebody comes up after a speeding ticket or something like that and comes up to the side of the vehicle, that car that the driver is in while pulled over poses an immediate threat. No, no, no, no. I mean if it's moving. It doesn't have to be the front of the vehicle. It could be any part of the vehicle that causes harm, right? Yes, Your Honor. If a vehicle is in reverse and it's being directed at an officer. If it's moving forward and the front of the vehicle has passed, there are still parts of the vehicle that can hit the officers, right? Judge, I don't know how the rear of the vehicle can hit an officer standing to the side of the vehicle. If you're turning your wheel and somebody's standing right where you turn, the back of the truck can hit them, right? I suppose that in some hypothetical that that is possible, Judge. A moving vehicle is dangerous, inherently dangerous. Your Honor, I'm not arguing that. What I'm suggesting is that in order to pull off a maneuver like you suggested, we'd have to have a factual scenario similar to Wilkinson. Well, my only point was you were saying because the front of the truck had passed the officers, the danger was over. And I'm saying as a matter of common sense, as long as a vehicle is moving, it can still hit someone. Judge, it's our position that in this specific factual inquiry relevant to this Court's But, see, this is a point related to what Judge Rawlston was saying. Maybe after the fact you can determine, well, the vehicle was on the path that was going to clear this officer by 18 inches. But when the vehicle is coming toward the officers, you know, just a small tilt of the steering wheel is going to make the vehicle move over, right? And the officer seeing the vehicle coming said, well, it's going to clear him by 18 inches, and I know he's not going to move the steering wheel. Well, he doesn't know that, does he? Well, and, Judge, from that perspective, I'll go ahead and concede that point, because I think it doesn't truly affect the argument today. If that's true, I think that it only reinforces the policies that you find in various municipalities, which is you don't shoot at a moving vehicle. Even though it's coming toward you? If what the general policies say, including the policy in this matter, is that unless you have no other option available, you are not to shoot at a moving vehicle, because if you do, it doesn't stop the vehicle, Your Honor. The general principle, as advocated by our expert in this matter, is you move. You get out of the way. If you can. Absolutely, Judge. And in this case, the truck was going at an average of 11 miles an hour. It was 11 miles an hour. Was there a question as to whether or not your client had a weapon in his truck? I don't believe it was a question. He did have a gun. There was a report on the radio call that led to this eventual pursuit, if that's what we're going to label it, or attempted arrest, that he had brandished a gun at a prior setting. And that's the radio call that went over on dispatch. The initial responding officers were two detectives in unmarked cars. The argument from appellees is that there was a three-mile pursuit during which my client was actively evading. And, Your Honors, I would submit to you that's not correct. My client testified while deposed that he was never aware he was being pursued by any officers, though at no point during this process was there a marked police car with lights or sirens behind my client's vehicle prior to the shooting. That quote-unquote flight that was focused upon by this court in Wilkinson, which involved the two pit maneuvers, and I don't have to go through all of it all over again, but there was a litany of attempted stops that took place in Wilkinson that led to the eventual risks or immediate threat conclusion by this court. Counsel, what are we to make of the fact that after your client saw a marked police car pass him and make a U-turn, he tried to turn into a driveway that led to a gated apartment complex? What's the significance of that fact? Your Honor, I don't know if it's of any. I would argue that unless he was consciously conceding that he was aware that that bubble top, which is what it's being referred to throughout the case, that patrol car was pursuing him, I don't think it has any significance. It's certainly a fact that a jury could infer A or B from. But as this Court is aware, if factual scenarios presented can provide different inferences by a jury, then it's the jury's domain. Yeah. It just seems really strange that with these two cars blocking his path and having made the, having seen the marked police car, that he would try to squeeze between those cars and not know that that was probably an exercise of authority. And, Judge, if that was the inquiry or the question being presented to this Court, then I would agree with you. I don't believe that. Well, you made the point that he wasn't aware that he was being pursued by police, and that's why I raised that point. And if I can respond to it, Your Honor, in actuality, he wasn't squeezing between anything. There was over 15 feet between the two officers that he was driving between. The officers that got out of the unmarked cars were not in uniform. As far as my client knew, they could have been people from the bar. They could have been anybody. One of them had a machine gun and within seconds leaned forward while my client's windows were up and shot through the window. Now, had my client's vehicle been moving forward? Yes, it had. Had it been moving forward at a high rate of speed? No. Had there been prior flight prior to this attempted seizure or arrest? No. None of those factors that were considered very, very thoroughly in Wilkinson are present here. And so the argument that's been made, which is that this case is, quote, unquote, uncanny in that it's so similar to Wilkinson, is simply not true. There are a vast number of differences which I provide in my pleadings. I don't want to reiterate to the Court today. I think the Court's aware of that, between this scenario and a Wilkinson scenario. In this case, we have a detective who mentions the fact that he has an MP5 machine gun after being told not to attempt to box in, do a box in. That's a maneuver where they attempt to box in a vehicle to control its path. Sergeant Butler, who was the supervising or, I guess, senior officer involved in that radio discourse prior to the shooting, responded to Detective Kohler, that's the shooter with the machine gun, responded to his request to do a box in by saying, no, I think we should wait for a patrol, let's not do that. That was the last order provided by a senior officer. Within moments thereafter, my client pulls into a gated community where the gate was closed, attempts to do a three-point turn, and from that point forward, within seconds, he's shot by the machine gun. So to draw the parallel, in this case, Your Honor, with Wilkinson, I think is to fit a square peg into a round hole. It just can't be done. And at this point, I see I have four minutes left, so I'd like to reserve it for rebuttal. All right. Thank you. Good morning, Your Honors. Mark Stedman on behalf of the defendants. With one minor exception regarding the movement of Levesque's hand as he drove at the officers, the facts of what happened in this incident are not in dispute. And what makes this case somewhat unique in that regard is that because of the physical evidence, the trajectory rods of the physical evidence, as is demonstrated in that diagram that was presented to the trial court and that has been presented to this court, the physical evidence, in terms of the trajectories of the bullet paths through Mr. Levesque's passenger side window and into his back seat, established the position of the officers, and that is corroborated by the casings that were found at the scene. What that meant was that reconstruction established was that Levesque was driving his vehicle, and Levesque had committed a serious crime in terms of pointing the gun at the bar, had fled from the police. Your Honor, you didn't mention one other factor. Not only does he turn off the road when he sees the marked police car, but he also is on the phone with his wife and tells the wife the helicopter is up ahead. He was well aware it was the police. Although these undercover officers were plainclothes officers, when they stepped out of their vehicle, they put on their police bust vests that said police. He knew it was the police. When he drove with these officers, these officers were just like as in Wilkinson. They were on foot, out of their vehicles. They were pointing their guns at him, telling him to stop. He drove at them, and he could have driven around them. There was room to drive around the police vehicles, but instead he drove at this narrow gap that if Officer Kohler's door was open was really only 12 foot. He drove his pickup at a 12-foot gap where two officers were standing. And we know that because the trajectories of those shots show that the first shot is fired from the front left towards the back, and then as the car continues forward, the angles of the shots become more horizontal. So, counsel, what's your response to opposing counsel's observation that once the front of the truck had passed them, there was no longer an immediate threat to them? Frankly, Your Honor, your justices really have ‑‑ judges have already made ‑‑ have already answered that. One is when the decision is made to shoot, that's a second or so before the actual bullets come out because he's got to perceive and react. So the vehicle is farther away from them at that point. When the decision to shoot is made, the vehicle is farther away, and with any slight movement, the officer can be hit. That's number one. Any slight movement of the steering wheel, the officer can be hit. Number one. Number two, the Officer Kohler is the gentleman with the MP5 gun because he was working on alcohol, tobacco, firearms duty. He had that gun with him. But the second officer, Glover, is farther back to his left. He is more in front of the vehicle. So even if the vehicle passes the first officer, the second officer is in danger, much in the same way that the officer fired in Wilkinson. He was firing not just for himself, the danger of this vehicle driving around at him, but also for a second officer. And that, again, you know, the Supreme Court has held that there's a hazy distinction between excessive force cases and appropriate cases, and that's why we give officers qualified immunity, to protect them from those difficult decisions, from having to face personal liability in those difficult decisions. In this case, it is undisputed that the shots that were fired were fired in a fraction of a second as the car bore down on them. And what makes the case unique is that the plaintiff's expert had no dispute with this reconstruction, no dispute about the evidence that was collected, no dispute about where the officers were standing, no dispute about the position of the vehicle, no dispute about the fact that the vehicle was moving at the officers at the time Officer Kohler fired and Officer Glover fired. That's what makes this case unique. The only really issue that we're here on, I think, are two things. The plaintiffs say, well, there's a witness, an independent witness that says, I didn't quite see it that way. And I have a couple of responses to that. The first was, as plaintiff points out in their reply brief, I said I was incorrect in saying that the plaintiffs never mentioned this witness to the trial court, because that's not true. I was mistaken. The plaintiffs filed two response briefs. One was responding to the City of Mesa and Officer Glover, and another brief responding to Officer Kohler. With regard to Officer Kohler, who was holding that MP5 gun, with regard to the brief against Officer Kohler, I was correct. In the 17 pages of that brief, not the separate statement of facts, but that brief, Carol Marsh, this independent witness, is not mentioned. But counsel is correct in the 17 pages of the brief against the City of Mesa. Yes, on one page, this independent witness, Carol Marsh, is mentioned. And the reason is because it was a tactical decision of the plaintiffs not to push this independent witness. And the reason is because the independent witness was, based on the undisputed evidence, just mistaken about when the shooting took place. What she described was the position of the vehicles that are shown in that diagram after the shooting had taken place. Levesque's truck moved forward and bumped into a marked patrol car at the end of the street. And so you can see in that diagram that was before the trial court, and the diagram that you have, that there really are two positions of the truck. The first is when Officer Kohler started shooting. The second is when the truck rolled forward another 30 feet and hit a patrol car. And that is what the witness saw. In fact, this witness said that the officers were behind the patrol car, behind the pickup of Mr. Levesque when they shot. But the undisputed physical evidence was that the shots came in from the front and on the side. There was no shots. The rear window was intact. There were no shots that came in from the rear. So that not only was it appropriate for the trial court to determine that no reasonable juror could have seen the case the way the witness did, because the witness was just mistaken. Well-intentioned, but mistaken. But, in fact, really that's what the plaintiffs understood in the trial court, because they did not push that angle. If they thought that they had a witness that said, you know what, these officers came in from behind and shot this man in the back, they would have developed that case, done some forensic reconstruction. But they didn't, because the physical evidence established that that just couldn't have happened. And so it's unfair for the plaintiffs now to – and it's not that they never mentioned it. It was mentioned. It's just that they are reformulating this argument to sort of say, wait a minute here, we've got an independent witness. The second point is – excuse me. The second point is this idea about what does their expert have to say. And I think Billington makes clear that, you know, you can't – the plaintiff can't basically wait for a motion for summary judgment and then get some expert testimony from a Mr. Van Blarecombe that says the magic words just to try to defeat summary judgment, which is really what happened in this case. The plaintiffs, Mr. Van Blarecombe gave his opinion. I deposed him. He had no dispute about the physical location of any of the vehicles, the reconstruction, no dispute whatsoever. Then – excuse me. Then after the – after the expert disclosure deadline had taken place, after discovery had closed, and one month after we filed our motion for summary judgment, the plaintiffs submit a revised report from Mr. Van Blarecombe to try to create a factual issue. And according to Billington, that's – that's really not – that's not – it's not fair, and it's not enough to defeat summary judgment. The – the comparisons between Wilkinson and Torres are substantial – excuse me – between Wilkinson and this case are substantial. You have a vehicle being used as a weapon at officers who are on foot, a dangerous criminal, and who's not stopping. And that those – in fact, in Wilkinson, we also have this issue about a witness who's not in the position of the officer, but who's farther away, and this witness had some questions that were – that were contradictory to what the officer said. But this Court, in its decision in Wilkinson, determined that those – those – that perspective of that witness was not sufficient to defeat summary judgment. The – in Wilkinson, the Court quotes, I believe, the Supreme Court saying that shooting a disturbed felon set on avoiding capture through a vehicle – set on avoiding capture through a vehicle where persons are in the immediate area is not a Fourth Amendment violation. Just as in Wilkinson, in this case, the officers got out of their vehicles and – and were prepared to make an arrest of the plaintiff because he had stopped. He drove into this residential neighborhood, the gate closed, and he was stuck. So he made a U-turn and then he paused. And before he went forward, the officers got out of their guns, pointed their – got out of their vehicles and pointed the gun at – at Levesque. As in – as in Wilkinson, the situation had rapidly changed from a vehicle that was to accelerate within close quarters of two officers on foot. As this Court mentioned when in questioning appellant's counsel, there is no dispute that Officer Kohler was within 18 inches of the time – 18 inches of the vehicle the time he fired. The – we cited Scott for the proposition that not because this was videotaped, but because the physical evidence created a circumstance that was not in dispute about what happened. And when there was not a dispute about what happens, then it is – then it is up to the judge on the qualified immunity question to really – to determine as a matter of law whether the officers' actions were reasonable. Mr. Van Blericombe uses the magic words to dispute that, but what he disputes is really the decision of the Court as a matter of law about whether the officers' actions were reasonable. Here these officers were faced with an immediate threat of serious injury or death, and they responded. And those facts are not in dispute. Whether the officers – whether their response was reasonable or not is – was a question for the Court on qualified immunity. And the fact that Mr. Van Blericombe trots out that magic language just as it did in Billington is not sufficient to defeat summary judgment. And if the Court has no other questions? It appears not. Thank you, counsel. Thank you. Rebuttal. Likewise to all. I think the problem, Your Honors, with comparing this case with Wilkinson is – and taking the very limited view of a vehicle accelerating, is that it ignores the preceding pursuit in Wilkinson, which built up the perceived threat of imminent bodily harm. It built up the reasonable perception of risk. In Wilkinson, the Court, this Court, focused upon the repeated failure of the defendant in that case, or the plaintiff, pardon me, in that case, to adhere to orders to pull over, to stop, to slow down. Not only did he ignore or get around two pit maneuvers, but his vehicle ran into a telephone pole, into a field of mud, at which point he then put it in reverse, spun the wheels, began to spin, and as the arguing attorney in that case indicated, the officer in danger at that point was in the, quote-unquote, vortex of the problem, in the vortex of the risk. That's not what we have here. Not at all. What we have here is a gentleman that did a bad act, committed a crime, left a bar, was never in pursuit, never being pursued by officers knowingly, didn't attempt to actively, actively evade arrest prior to the situation. And as the Court noted earlier, just because somebody says they're a police officer doesn't necessarily mean they are. A detective in this case got out with a machine gun in plain clothes and allegedly a black vest on that said police in small letters, pointed it at him while my client's windows were up. From that moment forward, he disregarded the Sergeant Butler's prior order to wait for a patrol officer to come to attempt a conventional stop, which at that point had yet to be attempted, and opened fire. It's that simple. In this case, in this matter, the instant matter, none of those preceding factors which were When it comes to the concern for Detective Glover, if I may just address that for a moment, there's this justification that is being presented that Detective Kohler didn't know where Detective Glover was and therefore had a reasonable fear of risk to him, which is a great deal of what the Wilkinson Court decision took into account. During the deposition of Detective Kohler, he indicates that from the moment my client's which is prior to it moving forward, from that point forward, he was totally unaware of where Detective Glover was. So there is a period of time during which once the pickup truck gets into the reverse portion of that three-point turn, from that point on, Detective Kohler's got his MP5 machine gun trained on my client and he's not paying any attention to Detective Glover. That is not what was presented in Wilkinson. In Wilkinson, the detective that fired saw his partner go down in the mud. Mud was flying everywhere and the preceding factors had already taken place. None of that is here. At some point, the court, I would submit, has to draw a line as to what is reasonable and what the court will recognize as disputed. We have a lay witness whose testimony can be challenged for purposes of credibility through jury trial who says at no point did she think either of the detectives were at risk. She indicates she heard the shots fired. She indicates she saw Detective Kohler with his machine gun trained on him. Whether she's mistaken about details, an officer in the back or not, is an issue for a jury to consider when determining her credibility. But we have a variety of facts. Why is her opinion as to whether or not they were at risk itself admissible? Your Honor, I'd argue that it speaks to the reasonability or the reasonableness for this Court in its evaluation. So her perceptions are relevant to this Court's determination of Detective Kohler's decision because they speak to the reasonableness or lack thereof of Detective Kohler's decision. And so we have a recondition to recognizing a constitutional violation occurred. So with that said, we have a situation where a detective is unaware of where Glover is. We have a reconstruction which shows bullets were fired not from the front but from the side. We have a reconstruction which demonstrates a vehicle went an average of 10.6 miles an hour with no preceding flight. And that we have various witnesses, including my client, who indicate that he never drove at the other detectives at all. That ought to be enough for this Court to determine that Detective Kohler's perception was unreasonable, or at least it's disputed. And that's the real issue here. In Judge Bolton's ruling, and I'll see that I have about a minute left. Oh, no, you're over. Red means you're over. Then I'll wrap it up. I apologize. Thank you. I apologize to the Court. That's okay. At the end of the day, Your Honors, we have a situation where the case is highly distinct from Wilkinson. We don't have escalating active resistance. And in the absence of those factors, it is not reasonable to employ an MP5 machine gun to stop somebody moving at 10 miles an hour that is not driving at you. All right. It's amazing that your client survived. I agree, Your Honor. He died on the scene, and they brought him back twice. All right. Thank you to counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. This case stands in recess until 9 a.m. tomorrow morning.
judges: Tashima, Rawlinson, Cjj Rakoff (S. New York), Dj